UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ALABAMA EDUCATION ASSOCIATION; *et al.*, ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Civil Action No. CV-11-S-761-NE |
| ROBERT BENTLEY, in his official capacity as Governor of the State of Alabama and President of the State School Board; *et al.*, ) ) ) ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This opinion addresses the following motions: the "Emergency Motion for Clarification" filed by Mike Hubbard, Speaker of the Alabama House of Representatives, Del Marsh, Alabama Senate President *Pro Tempore*, and the "Bice Defendants";[1] the "Emergency Motion to Stay by Third-Parties Senator Del Marsh, Speaker Mike Hubbard, and Defendants Bice, Hill, and Treese";[2] and the "Emergency Motion to Stay by Former Governor Bob Riley."[3]  The motions address the order

---

[1] Doc. no. 149.  Former Governor Riley and current Governor Bentley did not join in the motion for clarification.  Instead, Governor Bentley and two other defendants — Marquita Davis, Finance Director of the State of Alabama, and Thomas L. White, Jr., Comptroller of the State of Alabama — filed a "response" to the motion.  *See* doc. no. 151 (Response to Emergency Motion for Clarification).  That pleading appears to be a motion addressing other, discovery-related issues.  Accordingly, it will be addressed in a separate order.

[2] Doc. no. 153, electronically filed at 4:36 p.m. on Friday, Jan. 18, 2013.

[3] Doc. no. 155, electronically filed at 5:07 p.m. on Friday, Jan. 18, 2013.

entered on January 3, 2013, denying motions to quash subpoenas issued by plaintiffs to Speaker Hubbard, President *Pro Tempore* Marsh, former Alabama Governor Robert R. ("Bob") Riley, and current Alabama Governor Robert J. Bentley (collectively, the "Officials"), and directing the Officials to "provide full and complete responses to the subpoenas . . . on or before Friday, February 1, 2013."[4]

## I. DISCUSSION

Fundamentally, the order overruling the Officials' motions to quash observed that neither executive nor legislative deliberative process privileges are available in cases such as this one, in which the governmental decision-making process is, itself, the subject of the litigation.[5]

Even so, this court proceeded to examine the minimum prerequisites for asserting governmental privilege claims, and concluded that movants had not complied with any of them.

> At least four requirements must be satisfied in order to support a claim of privilege based upon the doctrines discussed in Part I(H) of this opinion, *supra*.
>
> [1] The head of the agency claiming the privilege must personally review the material, [2] there must be "a specific designation and description of the documents claimed to be privileged," and [3] there must be "precise and certain reasons for preserving" the confidentiality of the

---

[4] Doc. no. 148, at 53.

[5] *See* doc. no. 148 (Memorandum Opinion and Order entered Jan. 3, 2013), at 36-38.

2

>   communications. [4] Usually such claims must be raised by affidavit.

*United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980) (alterations supplied) (quoting *A. O. Smith v. Federal Trade Commission*, 403 F. Supp. 1000, 1016 (D. Del. 1975) (other citations omitted)). As will be seen, the motions before this court do not comply with any of those requirements.[6]

This court observed that when, as here, governmental privileges are asserted only by means of a motion filed by an attorney representing the official upon whom the subpoena was served — as opposed to an affidavit executed by that official, attesting that he personally reviewed the documents sought, and providing "a specific designation and description of the documents claimed to be privileged," as well as "precise and certain reasons for preserving" the confidentiality of the communications, *id*. — such a procedure is not adequate to validly invoke the privileges.[7]

This court also observed that the governmental privileges relied upon by movants are not absolute. "Instead, each is qualified, and subject to a balancing of interests."[8] Hence, the absolute necessity for supplying specific descriptions of the documents withheld under a claim of privilege, as well as precise statements of the reasons for preserving the confidentiality of the communications — considerations

---

[6] *Id*. at 40-41 (footnotes omitted).

[7] *See id*. at 42-47.

[8] *Id*. at 40. *See generally id*. at 26-36 (discussing each of the privileges interposed in opposition to plaintiffs' subpoenas).

that are necessary to allow a reasoned determination of the legitimacy of the claimed privileges. This court observed that those requirements were mirrored in Federal Rule of Civil Procedure 45(d)(2), which expressly states that any documents, communications, or tangible things withheld under a claim of privilege "must" be described with clarity and specificity in order to enable the opposing parties (and, implicitly, the court) to assess the validity of the claim.[9] As plaintiffs observed, the classic manner of complying with Rule 45(d)(2) is through the creation of a "privilege log."[10]

This court observed that the Officials' failure to satisfy the descriptive requirements stated in *United States v. O'Neill*, *supra*, and Rule 45(d)(2) was, alone, a sufficient basis for denying the motions to quash.: *i.e.*, "broad, undifferentiated claims of privilege, such as those lodged in the motions before this court, provide sufficient reason to deny them."[11]  Indeed, "[n]umerous cases have held that improperly asserted claims of privilege are no claims of privilege at all."[12]

Finally, this court held that "when, as here, privileges are asserted in vague, nonspecific terms, untethered from the requirements discussed above, the privileges

---

[9] *Id*. at 47-48.

[10] *See* doc. no. 150 (AEA Plaintiffs' Response to Doc. 149 ("Emergency Motion for Clarification")), at 6.

[11] *See* doc. no. 148 (Memorandum Opinion and Order entered Jan. 3, 2012), at 49 (citations omitted).

[12] *Id*. at 52 (citations omitted).

are deemed to have been waived."[13]

Thus, if movants' "Emergency Motion" sought only "clarification" of this court's prior order, discussion could end here, with a simple statement to the effect that the opinion and order denying the motions to quash should be construed as holding that movants cannot now submit privilege logs, affidavits, and similar materials in support of their overruled privilege claims.

Movants raise other contentions that require discussion, however, as when they argue that:

> In no case cited by the Court were the government respondents ordered to produce otherwise privileged documents simply because they lost a motion to quash. *See* doc. 148 at 51-52. Instead, in every cited case, compelled production became appropriate only after the respondents failed to properly claim the privileges at the time commanded for production. . . . [T]he time commanded for production has not yet come in this case. By previous order, only a ruling on the motion to quash would revive the respondents' "obligations to comply with the contested subpoenas." Doc. 115 at 5.[14]

## A.   The Proper Time for Filing Privilege Logs

---

[13] *Id*.

[14] Doc. no. 149 (Emergency Motion for Clarification), at 4-5 (alterations supplied). To the extent that movants may actually be asking the court to reconsider its prior decision, they have failed to articulate any reason for the applicability of any subpart of Federal Rule of Civil Procedure 60(b). Indeed, they seem to base their implicit request for reconsideration upon their disagreement with the authorities cited in the order denying the Officials' motions to quash, and upon their interpretation of an earlier order staying discovery pending a ruling on motions to dismiss. However, "mere disagreement with the district court's decision is an inappropriate ground for a motion for reconsideration: such disagreement should be raised through the appellate process." *United States v. Ezell*, No. 09-0460-WS, 2011 WL 2650870, at *14 (S.D. Ala. July 6, 2011) (internal quotation marks and citation omitted).

Federal Rule of Civil Procedure 45 provides that:

> A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. *The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.*

Fed. R. Civ. P. 45(c)(2)(B) (emphasis supplied).

In addition, Rule 45(d)(2)(A)(ii) mandates that a person withholding subpoenaed material under a claim of privilege "must . . . describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."[15] Admittedly, the text of that Rule does not expressly state *when* the party claiming a privilege must "describe the nature of the withheld documents" — that is, *when* the party must provide a privilege log, affidavits, and similar materials supporting its claim.[16] Moreover, the Eleventh Circuit apparently has not determined what constitutes timely production of a privilege log.

For such reasons, this court's prior order did not cite any cases addressing a specific time limit within which parties claiming a privilege must supply a privilege

---

[15] *See* doc. no. 148 (Memorandum Opinion and Order entered Jan. 3, 2012), at 48 & n.59.

[16] *See, e.g.*, *United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980); *A. O. Smith v. Federal Trade Commission*, 403 F. Supp. 1000, 1016 (D. Del. 1975).

log describing the nature of the withheld documents. Instead, this court relied largely on cases addressing *motions to compel* the production of documents that had been filed *after* the denial of motions to quash. Movants' "Emergency Motion" challenges this court's reliance upon such cases. It is significant to note, however, that movants *themselves* cited a case that arose on a motion to compel during briefing on the motions to quash, and they did so in the context of discussing the proper time to file a privilege log:

> While Plaintiffs recognize the potential applicability of the deliberative process privilege, they demand that Movants provide a log of responsive documents. Plaintiffs' request in this regard is based on two grounds: (1) the court's approach in *Doe*, 788 F. Supp. 2d at 987, and (2) Fed. R. Civ. P. 45(d)(2). Doc. 105 at 6-8.
>
> . . . .
>
> Regarding the second ground [for requiring movants to file a privilege log], Movants note that Plaintiffs have cited no authority for their request in addition to Rule 45(d)(2) itself. Movants are aware of no Eleventh Circuit case law requiring a privilege log at this stage and under these circumstances. Movants note that the D.C. Circuit has adopted a rule that states that the information required by Rule 45(d)(2) must be provided to the requesting party "within a *reasonable time*, such that the claiming party has adequate opportunity to evaluate fully the subpoenaed documents and the requesting party has ample opportunity to contest that claim." *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C. Cir. 1996) (emphasis in original). The claiming party is not required to provide the information in Rule 45(d)(2) at the time the initial objection is asserted, *i.e.*, at the time of filing the motion to quash. *Id.*[17]

---

[17] Doc. no. 108 (Reply in Support of Motion to Quash Subpoenas Directed to Speaker Hubbard, President *Pro Tempore* Marsh, and Former Governor Riley, and to Stay All Discovery

Movants' argument illustrates their awareness that: cases on motions to compel may apply to rulings on motions to quash; that the parties disputed the proper time to file a privilege log; and, that the log should have been filed, at the very least, within a "reasonable time." *Tuite*, 98 F.3d at 1416. Indeed, Governor Bentley filed a privilege log sometime before October 9, 2012, and noted the filing of that log in his reply in support of the Governor's motion to quash:[18] an action that plainly demonstrated his understanding of the fact that a privilege log was due *before* this court ruled on the motions to quash, because the descriptive information contained in the log would be relevant to the court's decision.

While the Eleventh Circuit has not considered the appropriateness of the "reasonable time" rule promulgated in the *Tuite* opinion, another court within this Circuit found that standard "too amorphous to provide practical guidance to litigants." *Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc.*, 230 F.R.D. 688, 698 (M.D. Fla. 2005). That court adopted a test articulated by the Ninth Circuit in *Burlington Northern & Santa Fe Railway Co. v. United States District*

---

Pending Resolution of the Defendants' Motions to Dismiss by Alabama House of Representatives Speaker Mike Hubbard, Alabama Senate President *Pro Tempore* Del Marsh, and the Bice Defendants), at 3-4 (alteration supplied).

[18] *See* doc. no. 144 (Reply in Support of Motion to Quash Subpoena by Governor Bentley), at 2 ("Since filing his motion to quash, Governor Bentley has provided to Plaintiffs a log of documents responsive to their subpoena to him."); *see also* doc. no. 151-1 (Response to Emergency Motion for Clarification), Exhibit "A" (Privilege Log).

*Court for the District of Montana*, 408 F.3d 1142 (9th Cir. 2005),[19] as the standard for assessing the timeliness of a privilege log, as seen in the following extract from the *Universal City* opinion:

> Although the Eleventh Circuit has not addressed the issue of waiver of privileges for documents subpoenaed pursuant to Rule 45, the rule itself requires both that an objection be made to the subpoena and the claim of privilege must be stated within 14 days of service of the subpoena. Fed. R. Civ. P. 45(c)(2)(B). *See also Tuite v. Henry*, 321 U.S. App. D.C. 248, 98 F.3d 1411, 1416 (D.C. Cir. 1996). Failure to serve written objection to a subpoena within the time specified by Fed. R. Civ. P. 45 typically waives any objections the party may have. *Am. Elec. Power Co., Inc. v. U.S.*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44. 48 (S.D. N.Y. 1996); *Angell v.*

---

[19] The Ninth Circuit's decision in the *Burlington Northern* case addressed claims of privilege lodged in response to a request for production of documents under Federal Rule of Civil Procedure 34. That distinction is not significant for the present analysis, however, except to note that Rule 34(b)(2)(A) requires a response to be filed within 30 days, rather than within the 14-day period specified in Rule 45(c)(2)(B). The *Burlington Northern* test rejects a *per se* rule that the failure to produce a privilege log within Rule 34's 30-day time period for filing objections results in waiver of the privilege. Instead, the Ninth Circuit adopted that Rule's 30-day requirement (and, by extension, Rule 45's 14-day deadline) "as a default guideline." Even so, the Ninth Circuit opinion enumerated other factors that might be taken into account on a case-by-case basis:

> [U]sing the 30-day period as a default guideline, a district court should make a case-by-case determination, taking into account the following factors: *the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged* (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); *the timeliness of the objection and accompanying information about the withheld documents* (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

*Burlington Northern*, 408 F.3d at 1149 (emphasis supplied).

9

*Shawmut Bank Connecticut Nat'l Assoc.*, 153 F.R.D. 585, 590 (M.D. N.C.1994).

Not only must a party timely object under Rule 45(c)(2)(B), but the party must also prepare a privilege log in accordance with Fed. R. Civ. P. 45(d)(2). Rule 45(d)(2) provides:

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

*Although Rule 45(d)(2) does not contain a specific time limit within which objecting parties must supply the requisite privilege log, the Advisory Committee Notes indicate that the purpose of the Rule "is to provide a party whose discovery is constrained by a claim of privilege . . . with information sufficient to evaluate such a claim and to resist if it seems unjustified."*

Although the D.C. Circuit has stated that "common sense and the purpose of the rule dictate that the 'subject to' language of Rule 45(c)(2)(B) does not mandate that the full description required by Rule 45(d)(2) be provided at the time the initial objection is asserted," this Court rejects the D.C. Circuit's suggestion that the log is timely so long as it is produced within a "reasonable time." *Tuite*, 93 F.3d at 1416. *Use of a "reasonable time" standard is too amorphous to provide practical guidance to litigants and exposes parties to greater chance of inadvertently waiving privileges.*

Because the purpose of Rule 45(d)(2) is the same as Rule 26(b)(5),[20] the Court adopts the test articulated by the 9th Circuit in

---

[20] The language of Federal Rule of Civil Procedure 26(b)(5), which addresses the proper method for withholding information that would otherwise be discoverable under Rule 26 when the withholding party contends the withheld materials are subject to a privilege, is virtually identical to the text of Rule 45(d)(2). Specifically:

> *Burlington Northern* for assessing timeliness of a privilege log. Therefore, the Court uses the 14-day objection period as a default guideline and makes a case-by-case determination, taking into account the following factors: the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

*Universal City*, 230 F.R.D. at 697-98 (emphasis and bracketed alteration supplied).

Even if this court were to adopt the "reasonable time" rule promulgated in *Tuite*, that would not benefit movants. Speaker Hubbard, President *Pro Tempore* Marsh, and the Bice Defendants filed a motion to quash plaintiffs' subpoenas on June 21, 2012.[21] Movants thus had over six months after filing that motion to submit

---

> When a party withholds information otherwise discoverable by claiming that the information is privileged . . . material, the party *must*:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

[21] *See* doc. no. 104 (Motion to Quash Subpoenas Directed to Speaker Hubbard, President *Pro Tempore* Marsh, and Former Governor Riley, and to Stay All Discovery Pending Resolution of the

privilege logs and similar documents supporting their claims. After fully briefing the motions to quash, it defies logic to suggest that movants did not have an adequate opportunity to evaluate fully the subpoenaed documents. By failing to file privilege logs before this court ruled on the motions to quash, movants deprived plaintiffs of the opportunity to contest, and this court of a basis to evaluate, their privilege claims.

Under the standards adopted in *Burlington Northern*, 408 F.3d at 1149, and *Universal City*, 230 F.R.D. at 698, which this court finds more persuasive, movants have clearly not complied with the default rule setting the cutoff for serving privilege logs at fourteen days after service of the subpoenas. Further, the *Burlington Northern/Universal City* balancing test does not weigh in favor of an extension. First, the movants asserted privileges in "vague, nonspecific terms"[22] that fell far short of "providing particulars typically contained in a privilege log." The generality of movants' assertions prevented both plaintiffs and this court from assessing whether the withheld documents were privileged, and whether the magnitude and/or difficulty of the production weighed against compulsory disclosure. Further, privilege logs were not submitted within 14 days, or 30 days, or even six months after service of the subpoenas. Indeed, privilege logs have not been submitted by movants as of the date

---

Defendants' Motions to Dismiss by Alabama House of Representatives Speaker Mike Hubbard, Alabama Senate President *Pro Tempore* Del Marsh, and the Bice Defendants).

[22] Doc. no. 148 (Memorandum Opinion and Order entered Jan. 3, 2013), at 52.

of this order.

Finally, this court must address movants' argument that "the time commanded for production has not yet come in this case [because,] [b]y previous order, only a ruling on the motion to quash would revive the respondents' 'obligations to comply with the contested subpoenas.'"[23]  The stay order entered on July 6, 2012 is not relevant to the present motion, because that order suspended only the Officials' obligations to "comply with" the contested subpoenas until this court ruled on the pending motions to dismiss:

> [T]he motion to stay discovery filed by Hubbard, Marsh, and Riley is GRANTED, and it is ORDERED that all discovery is stayed until this court enters an order ruling on all pending motions to dismiss.  The motion to quash is held in abeyance, pending resolution of the motions to dismiss.  To be completely clear, it is ORDERED that Hubbard, Marsh, and Riley are relieved of their obligations to *comply with* the contested subpoenas until further order of the court.[24]

Even if movants interpreted the order staying their obligation to "comply with" plaintiffs' subpoenas pending the resolution of the motions to dismiss as suspending their obligation to *file privilege logs* until after this court ruled on the motions to dismiss, this court decided those motions on August 22, 2012, and denied the motions to quash on January 3, 2013 — *i.e.*, more than four months later.[25]  Thus, President

---

[23] Doc. no. 149 (Emergency Motion for Clarification), at 5 (alterations supplied) (quoting doc. no. 115 (Order), at 4).

[24] *See* doc. no. 115 (Order), at 4 (alteration and emphasis supplied).

[25] *See* doc. no. 126 (Memorandum Opinion and Order entered Aug. 22, 2012), and doc. no.

13

*Pro Tempore* Marsh and Speaker Hubbard had ample time during the four-month interval to file materials supporting their claims of privilege, but they did not do so, either within a "reasonable time," or at any other time.

## II. CONCLUSION

In sum, neither executive nor legislative deliberative process privileges are available in cases such as this one, in which the governmental decision-making process is, itself, the subject of the litigation.[26] Even if that were not true, movants still would have been required to satisfy the minimum prerequisites for invoking governmental privileges summarized in the quotation from *United States v. O'Neill* accompanying note 6, *supra*. Movants did not comply with *any* of those requirements, however. Consequently, their claims of privilege were waived. *See, e.g., In re Nelson*, 131 F.R.D. 161, 165 (D. Neb. 1989); *L.H. v. Schwarzenegger*, No. 06-2042, 2008 U.S. Dist. LEXIS 86829, at *27 (E.D. Cal. May 14, 2008); *In re McKesson*, 264 F.R.D. 595, 602 (N.D. Cal. 2009).

For all of the foregoing reasons, this court's order denying the Officials' motions to quash should be construed as meaning that movants cannot now submit privilege logs, affidavits, and similar materials supporting their claims of privilege on the February 1, 2013 deadline for production of documents in response to plaintiffs'

---

148 (Memorandum Opinion and Order entered Jan. 3, 2013).

[26] *See* doc. no. 148 (Memorandum Opinion and Order entered Jan. 3, 2013), at 36-38.

subpoenas.  Further, the motions to stay[27] are **DENIED**.

**DONE** and **ORDERED** this 22nd day of January, 2013.

_____
United States District Judge

---

[27] Doc. nos. 153 and 155.