# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| ALABAMA EDUCATION ASSOCIATION; *et al.*, ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Civil Action No. CV-11-S-761-NE |
| ROBERT BENTLEY, in his official capacity as Governor of the State of Alabama and President of the State School Board; *et al.*, ) ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This opinion addresses the pleading entitled "Response to Emergency Motion for Clarification" that was filed by current Alabama Governor Robert J. Bentley and two defendants: *i.e.*, Marquita Davis, Finance Director of the State of Alabama, and Thomas L. White, Jr., Comptroller of the State of Alabama.[1]  Movants address the order entered on January 3, 2013, denying motions to quash subpoenas issued by plaintiffs to Speaker Hubbard, President *Pro Tempore* Marsh, former Alabama Governor Robert R. ("Bob") Riley, and Governor Bentley (collectively, the

---

[1] *See* doc. no. 151 (Response to Emergency Motion for Clarification).  Although movants style their pleading a "response" to the "Emergency Motion for Clarification" that was filed by Speaker Hubbard, President *Pro Tempore* Marsh, and the "Bice Defendants," the pleading seeks "clarification" of several other discovery-related issues.  Accordingly, even though some of the issues in the pleading overlap with the issues in the original "Emergency Motion," this court discusses the pleading separately.

"Officials"), and directing the Officials to "provide full and complete responses to the subpoenas . . . on or before Friday, February 1, 2013."[2]

## I. DISCUSSION

The following statements from the memorandum opinion entered by this court on January 22, 2013, addressing, among other motions, the "Emergency Motion for Clarification" filed by Speaker Hubbard, President *Pro Tempore* Marsh, and the "Bice Defendants,"[3] are relevant to the disposition of the issues raised in the present pleading:

> Fundamentally, the order overruling the Officials' motions to quash observed that neither executive nor legislative deliberative process privileges are available incases such as this one, in which the governmental decision-making process is, itself, the subject of the litigation.[4]
>
> Even so, this court proceeded to examine the minimum prerequisites for asserting governmental privilege claims, and concluded that movants had not complied with any of them.
>
>> At least four requirements must be satisfied in order to support a claim of privilege based upon the doctrines discussed in Part I(H) of this opinion, *supra*.
>>
>>> [1] The head of the agency claiming the privilege must personally review the material, [2] there must be "a specific designation and

---

[2] Doc. no. 148 (Memorandum Opinion and Order entered Jan. 3, 2012), at 53.

[3] *See* doc. no. 149 (Emergency Motion for Clarification).

[4] *See* doc. no. 148 (Memorandum Opinion and Order entered Jan. 3, 2012), at 36-38.

> description of the documents claimed to be privileged," and [3] there must be "precise and certain reasons for preserving" the confidentiality of the communications. [4] Usually such claims must be raised by affidavit.
>
> *United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980) (alterations supplied) (quoting *A. O. Smith v. Federal Trade Commission*, 403 F. Supp. 1000, 1016 (D. Del. 1975) (other citations omitted)). As will be seen, the motions before this court do not comply with any of those requirements.[5]

This court observed that when, as here, governmental privileges are asserted only by means of a motion filed by an attorney representing the official upon whom the subpoena was served — as opposed to an affidavit executed by that official, attesting that he personally reviewed the documents sought, and providing "a specific designation and description of the documents claimed to be privileged," as well as "precise and certain reasons for preserving" the confidentiality of the communications, *id*. — such a procedure is not adequate to validly invoke the privileges.[6]

This court also observed that the governmental privileges relied upon by movants are not absolute. "Instead, each is qualified, and subject to a balancing of interests."[7] Hence, the absolute necessity for supplying specific descriptions of the documents withheld under a claim of privilege, as well as precise statements of the reasons for preserving the confidentiality of the communications — considerations that are necessary to allow a reasoned determination of the legitimacy of the claimed privileges. This court observed that those requirements were

---

[5] *Id*. at 40-41 (footnotes omitted).

[6] *See id*. at 42-47.

[7] *Id*. at 40. *See generally id*. at 26-36 (discussing each of the privileges interposed in opposition to plaintiffs' subpoenas).

3

mirrored in Federal Rule of Civil Procedure 45(d)(2), which expressly states that any documents, communications, or tangible things withheld under a claim of privilege "must" be described with clarity and specificity in order to enable the opposing parties (and, implicitly, the court) to assess the validity of the claim.[8]  As plaintiffs observed, the classic manner of complying with Rule 45(d)(2) is through the creation of a "privilege log."[9]

This court observed that the Officials' failure to satisfy the descriptive requirements stated in *United States v. O'Neill*, *supra*, and Rule 45(d)(2) was, alone, a sufficient basis for denying the motions to quash.: *i.e.*, "broad, undifferentiated claims of privilege, such as those lodged in the motions before this court, provide sufficient reason to deny them."[10]  Indeed, "[n]umerous cases have held that improperly asserted claims of privilege are no claims of privilege at all."[11]

Finally, this court held that "when, as here, privileges are asserted in vague, nonspecific terms, untethered from the requirements discussed above, the privileges are deemed to have been waived."[12]

Doc. no. 148 (Memorandum Opinion and Order entered Jan. 3, 2013), at 2-5.

Movants' "Response to Emergency Motion for Clarification" asks this court

to do the following:

clarify the scope of discovery available to the Plaintiffs in light of the pendency of this controversy in multiple State and federal courts and the pendency of the motion to certify under 28 U.S.C. § 1292(b); . . . clarify

---

[8] *Id*. at 47-48.

[9] *See* doc. no. 150 (AEA Plaintiffs' Response to Doc. 149 ("Emergency Motion for Clarification")), at 6.

[10] *See* doc. no. 148 (Memorandum Opinion and Order entered Jan. 3, 2012), at 49 (citations omitted).

[11] *Id*. at 52 (citations omitted).

[12] *Id*.

4

the extent to which the Governor, Davis, and White may supplement their assertions of privilege to comply with this Court's procedural requirements; and . . . clarify whether the Court determines that the State officials' assertions of the attorney-client privilege and work product privilege are waived.[13]

As grounds for permitting Governor Bentley to supplement his assertions of privilege by the February 1st deadline for production of documents in response to plaintiffs' subpoenas, movants have noted that:

> Counsel for AEA, in his response on September 11 to the Governor's Motion to Quash (Doc. 129), indicated to the Court that no privilege logs had been provided. At that moment, the statement was accurate. However, the Governor, Davis, and White subsequently provided privilege logs. The Governor advised the Court in his October 9 reply that he had done so. (Doc. 144).[14]

Although Governor Bentley indeed supplied a privilege log for *plaintiffs'* review, he did not file a copy of the log with this court while it was considering his motion to quash plaintiffs' subpoenas.[15] Instead, the Governor first submitted the log for *this court's* review as an exhibit to his present "Response to Emergency Motion for Clarification."[16] Upon consideration, the log does not address the issues raised

---

[13] Doc. no. 151 (Response to Emergency Motion for Clarification), at 8.

[14] *Id.* at 3.

[15] See doc. no. 144 (Reply in Support of Motion to Quash Subpoena by Governor Bentley), at 2 (stating that "[s]ince filing his motion to quash, Governor Bentley has provided to Plaintiffs a log of documents responsive to their subpoena to him," without attaching the log under discussion) (alteration supplied).

[16] *See* doc. no. 151-1 (Response to Emergency Motion for Clarification), Exhibit "A" (Privilege Log).

5

in the order denying the Governor's motion to quash the subpoenas. First, the privilege log admittedly was not accompanied by "an affidavit from the Governor himself."[17] *See O'Neill*, 619 F.2d at 226 (noting that privilege claims by government officials must usually be raised by affidavit). Second, the privilege log contained neither "a specific designation *and description* of the documents claimed to be privileged," nor "*precise and certain reasons* for preserving" the confidentiality of the communications. *See id.* (emphasis supplied).

Specifically, Governor Bentley's half-page privilege log provided only the following eight categories of information: "Document Number," "Date & Time," "Sender/Creator," "Primary Recipient(s)," "Other Recipient(s)," "Document Type," corresponding request for production, and asserted privilege(s).[18] However, the log did not explain *why* the asserted privileges applied. By way of example, the log designated ten of the fourteen listed documents as protected from disclosure by the attorney-client privilege, but it did not state that *any* of the senders or recipients, let alone *all* of them, were, in fact, attorneys and clients.[19] *See South Carolina v. United States*, No. 1:12-cv-00203, slip at 2 (D. D.C. 10 Aug. 2012) (holding that "an attorney's 'advice on political, strategic, or policy issues, valuable as it may [be],

---

[17] *Id.* at 8.

[18] *Id.*, Exhibit "A" (Privilege Log).

[19] *See id.*

would not be shielded from disclosure by the attorney-client privilege'") (alteration supplied (citing *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) (*per curiam*)).[20]

Accordingly, this court's order directing the Officials to "provide full and complete responses to the subpoenas . . . on or before Friday, February 1, 2013,"[21] should be interpreted as meaning that the Officials must *respond* to the subpoenas by February 1, 2013, and that they cannot *supplement their assertions of privilege*, including of the attorney-client and work product privileges, by the February 1st deadline. The order addressed neither the scope of discovery available to plaintiffs, nor the claims of privilege by Finance Director Davis and Comptroller White.

**DONE** and **ORDERED** this 23rd day of January, 2013.

_____
United States District Judge

---

[20] *See* doc. no. 158-1 (Response to Governor Bentley's Motion for Clarification), Exhibit "1" (Order in *South Carolina v. United States,* No. 1:12-cv-00203, slip (D. D.C. 10 Aug. 2012)).

[21] Doc. no. 148 (Memorandum Opinion and Order entered Jan. 3, 2012), at 53.